UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH


(FILED ELECTRONICALLY)


CIVIL ACTION NO. ___5:19CV-17-TBR___

UNITED STATES OF AMERICA                                    PLAINTIFF

vs.

KRISTOPHER W. DENSON                                        DEFENDANTS
5931 Oaks Road
Paducah, KY 42003-9526

KELLY J. DENSON
1630 Century Lane
Paducah, Kentucky  42003

COMMONWEALTH OF KENTUCKY
c/o Attorney General
700 Capitol Avenue, Suite 118
Frankfort, KY 40601-3449


**COMPLAINT FOR FORECLOSURE**

Plaintiff, the United States of America, states as follows:

1.      This is a mortgage foreclosure action brought by the United States of America on

behalf of its agency, the United States Department of Agriculture Rural Housing Service also

known as Rural Development (hereinafter collectively "RHS").

2.      Jurisdiction arises under 28 U.S.C. § 1345.  Venue is proper in this judicial

division, where the subject property is located.

3.      RHS is the holder of a promissory note executed for value on March 7, 1990 by

Mark J. Williams and Peggy A. Williams (not defendants herein).  The principal amount of the

Note was $33,000.00, bearing interest at the rate of 8.75 percent per annum, and payable in monthly installments as specified in the Note. A copy of the Note is attached as **Exhibit A** and incorporated by reference as if set forth fully herein.

4.     The Note is secured by a Real Estate Mortgage recorded on March 7, 1990, in Mortgage Book 456, Page 391, in the Office of the Clerk of McCracken County, Kentucky. Through the Mortgage, Mark J. Williams and Peggy A. Williams granted RHS a first mortgage lien against the real property including all improvements, fixtures and appurtenances thereto at 1630 Century Lane, Paducah, McCracken County, Kentucky (the "Property") and described in more detail in the Mortgage. A copy of the Mortgage is attached as **Exhibit B** and incorporated by reference as if set forth fully herein.

5.     On or about August 12, 1998, Defendants Kristopher W. Denson and Kelly J. Denson ("the Defendant Borrowers") signed and delivered to RHS an Assumption Agreement, a copy of which is attached as **Exhibit C** incorporated by reference as if set forth fully herein. In and by the Assumption Agreement, Kristopher W. Denson and Kelly J. Denson became liable to RHS under the Note, Assumption Agreement and Mortgage with new rates and terms of $30,405.39 principal at an interest rate of 6.250 percent.

6.     RHS is the holder of a second promissory note ("the Second Note") executed for value on August 12, 1998 by the Defendant Borrowers. The principal amount of the Second Note was $21,965.00, bearing interest at the rate of 6.250 percent per annum, and payable in monthly installments as specified in the Note. This Second Note was reamortized on July 12, 2004 and July 12, 2006 in the amounts of $20,660.09 and $20,776.53, respectively. A copy of the Second Note is attached as **Exhibit D** and incorporated by reference as if set forth fully herein.

2

7.     The Second Note is secured by a second Real Estate Mortgage ("the Second Mortgage") recorded on August 17, 1998, in Mortgage Book 637, Page 505, in the Office of the Clerk of McCracken County, Kentucky.  Through the Second Mortgage, the Borrowers granted RHS an additional mortgage lien against the real property including all improvements, fixtures and appurtenances thereto at 1630 Century Lane, Paducah, McCracken County, Kentucky (the "Property") and described in more detail in the Second Mortgage.  A copy of the Second Mortgage is attached as **Exhibit E** and incorporated by reference as if set forth fully herein.

8.     To receive subsidies on the second loan, the Defendant Borrowers signed a Subsidy Repayment Agreement authorizing RHS to recapture, upon transfer of title or non-occupancy of the Property, any subsidies granted to the Defendant Borrowers by RHS.  A copy of the Subsidy Repayment Agreement is attached as **Exhibit F** and incorporated by reference as if set forth fully herein.

9.     The United States does not seek through this action to impose personal liability against the Defendants Kristopher W. Denson and Kelly J. Denson for their default on the Notes and Mortgages.  On August 12, 2002, Kristopher W. Denson and Kelly J. Denson filed a Chapter 7 bankruptcy petition in the Bankruptcy Court for the Western District of Kentucky, Case No. 02-51195.  The Bankruptcy Court granted Kristopher W. Denson and Kelly J. Denson a discharge from personal liability on November 5, 2002.

10.     Again on July 10, 2013, Kristopher W. Denson and Kelly J. Denson filed a Chapter 7 bankruptcy petition in the Bankruptcy Court for the Western District of Kentucky, Case No. 13-50523.  The Bankruptcy Court granted Kristopher W. Denson and Kelly J. Denson a discharge from personal liability on November 5, 2013.

11.     The Defendant Borrowers have defaulted on the Note and Mortgage, Assumption Agreement, and Second Note and Second Mortgage  by failing to make payments when due.

12.     RHS has, in accordance with the loan documents, accelerated the loans and declared the entire principal balance, together with all accrued and unpaid interest and all other sums due under the loan documents, to be due and payable.  Further, RHS sent notice to the Defendant Borrowers of the default and acceleration of the loans.

13.     In accordance with the loan documents, the United States is entitled to enforce the Mortgages through this foreclosure action and to have the Property sold to pay all amounts due, together with the costs and expenses of this action.

14.     The unpaid principal balance on the Notes and Assumption Agreement is $47,956.30 with accrued interest of $5,838.48 through January 23, 2018 with a total subsidy granted of $7,954.72, late charges in the amount of $49.78 and fees assessed of $5,048.00, for a total unpaid balance of $60,847.34 as of January 23, 2018.  Interest is accruing on the unpaid principal balance at the rate of $9.054 per day after January 23, 2018.

15.     The Property is indivisible and cannot be divided without materially impairing its value and the value of RHS's liens thereon.

16.     Defendant Commonwealth of Kentucky, Education Cabinet, Division of Unemployment Insurance may claim an interest in the Property by virtue of a Notice of Recoupment Lien recorded on October 9, 2005 in ROI Book 72, Page 501 in the McCracken County Clerk's Office, a copy of which is attached as **Exhibit G**.  The interest of this Defendant is inferior in rank and subordinate in priority to the first mortgage lien on the Property in favor of RHS, and the Plaintiff calls upon this Defendant to come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

4

17.     There are no other persons or entities purporting to have an interest in the Property known to the Plaintiff.

WHEREFORE, Plaintiff, the United States of America, on behalf of RHS, demands:

a.     In rem judgment against the interests of the Defendant Borrowers in the Property in the principal amount of $47,956.30, plus $5,838.48 interest as of January 23, 2018, $7,954.72 for reimbursement of interest credits, late charges in the amount of $49.78, and fees assessed of $5,048.00, for a total unpaid balance due of $60,847.34 as of January 23, 2018, with interest accruing at the daily rate of $9.054 from January 23, 2018, until the date of entry of judgment, and interest thereafter according to law, plus any additional costs, disbursements and expenses advanced by the United States;

b.     That the United States be adjudged a lien on the Property, prior and superior to any and all other liens, claims, interests and demands, except liens for unpaid real estate ad valorem taxes;

c.     That the United States' liens be enforced and the Property be sold in accordance with 28 U.S.C. §§ 2001-2003 subject to easements, restrictions and stipulations of record, but free and clear of all other liens and encumbrances except liens for any unpaid ad valorem real property taxes;

d.     That the proceeds from the sale be applied first to the costs of this action, second to any ad valorem real property taxes, if any, third to the satisfaction of the debt, interest, costs and fees due the United States, with the balance remaining to be distributed to the parties as their liens or interests may appear;

e.     That the Property be adjudged indivisible and be sold as a whole; and

f.      That the United States receive any and all other lawful relief to which it may be

entitled.

UNITED STATES OF AMERICA

RUSSELL M. COLEMAN
United States Attorney


s/ William F. Campbell
William F. Campbell
Katherine A. Bell
Assistant United States Attorneys
717 West Broadway
Louisville, Kentucky  40202
Phone:  502/582-5911
Fax:    502/625-7110
bill.campbell@usdoj.gov
Katherine.bell@usdoj.gov

USDA-FmHA
Form FmHA 1940-16
(Rev. 8/87)

**PROMISSORY NOTE**

| TYPE OF LOAN |
|---|
| RH |

| STATE | KENTUCKY |
|---|---|
| COUNTY | MCCRACKEN |
| CASE NO. | |

**ADVICE # 2007300008**

Date **MARCH 7**, 19**90**

FOR VALUE RECEIVED, the undersigned (whether one or more persons, herein called "Borrower") jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration,

United States Department of Agriculture, (herein called the "Government") at its office in _____

**LACENTER, KENTUCKY** _____

THE PRINCIPAL SUM OF **THIRTY-THREE THOUSAND AND NO/100** _____

DOLLARS ($ **33,000.00** _____ ), plus INTEREST on the UNPAID PRINCIPAL of

**EIGHT AND THREE FOURTHS** PERCENT ( **08.7500** %) PER ANNUM.

Payment of the said Principal and Interest shall be as agreed between the Borrower and the Government using one of three alternatives as indicated below: (check one)

☐ I.  Principal and Interest payments shall be deferred. The interest accrued to _____ , 19____

shall be added to the Principal. Such new Principal and later accrued Interest shall be payable in _____ regular amortized installments on the dates indicated in the box below. Borrower authorizes the Government to enter the amount of

such new Principal herein $_____ and the amount of such regular installments in the box below, when such amounts have been determined.

☐ II.  Payment of Interest shall not be deferred. Installments of accrued Interest shall be payable on the _____

of each _____ beginning on _____ , 19____ , through _____ , 19____ ,

Principal and later accrued Interest shall be paid in _____ installments as indicated in the box below:

☒ III.  Payments shall not be deferred. Principal and Interest shall be paid in **396** installments as indicated in the box below:

| $ **256.00** | on **APRIL 7** , 19 **90** , and |
|---|---|
| $ **256.00** | thereafter on the **7th** of each **month** |

until the PRINCIPAL and INTEREST are fully paid except that the FINAL INSTALLMENT of the entire indebtedness

evidenced hereby, if not sooner paid, shall be due and PAYABLE **THIRTY-THREE** ( **33** ) YEARS from the DATE of this NOTE. The consideration herefor shall support any agreement modifying the foregoing schedule of payments.

*Position 2* **EXHIBIT "A"** FmHA 1940-16 (Rev. 8/87)

If the total amount of the loan is not advanced at the time of loan closing, the loan shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval of the Government is mandatory provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown on the reverse hereof. Borrower authorizes the Government to enter the amount and date of such advance in the Record of Advances.

Payment of principal and interest shall be applied in accordance with FmHA accounting procedures in effect on the date of receipt of the payment. Borrower agrees to pay late charges in accordance with FmHA regulations in effect when a late charge is assessed.

Prepayments of scheduled installments, or any portion thereof, may be made at any time of the option of Borrower. Refunds and extra payments, as defined in the regulations (7CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied in accordance with FmHA regulations and accounting procedures in effect on the date of receipt of payments.

Borrower agrees that the Government at any time may assign this note. If the Government assigns the note and insures the payment thereof, and in such case, though the note is not held by the Government, Borrower shall continue to pay to the Government, as collection agent for the holder, all installments of principal and interest as scheduled herein.

If this note is held by an insured lender, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on either a calendar quarter basis or an annual installment due date basis. The effective date of any prepayment retained and remitted by the Government to the holder on an annual installment due date basis shall be the date of the pre-payment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between the effective date of any such prepayment and the date of the Treasury check to the holder.

CREDIT ELSEWHERE CERTIFICATION: Borrower hereby certifies that he/she is unable to obtain sufficient credit else-where to finance his/her actual needs at reasonable rates and terms, taking into consideration prevailing private and coopera-tive rates and terms in or near his/her community for loans for similar purposes and periods of time, and that the loan evidenced hereby shall be used solely for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY: If the property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for a term exceeding 3 years, or (3) sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the indebtedness evidenced hereby immediately due and payable.

REFINANCING AGREEMENT: Borrower hereby agrees to provide periodic financial information as requested by the Government. If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. This paragraph and the preceding paragraph shall not apply to any comaker signing this note pursuant to Section 502 of the Housing Act of 1949 to compensate for deficient repayment ability of other undersigned person(s).

CREDIT SALE TO NONPROGRAM BORROWER: The provisions of the paragraphs entitled "Credit Elsewhere Certifica-tion," and "Refinancing Agreement" do not apply if (1) this promissory note represents in whole or part payment for prop-erty purchased from the Government and (2) the loan represented by this promissory note was made to the borrower as an nonprogram borrower under Title V of the Housing Act of 1949, as amended, and regulations promulgated thereunder.

DEFAULT: Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder shall constitute default under this instrument and any other instrument evidencing a debt of Borrower owing to, insured or Guar-anteed by the Government or securing or otherwise relating to such a debt; and default under any such other instrument shall constitute default hereunder. UPON ANY SUCH DEFAULT, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Title V of the Housing Act of 1949 and for the type of loan as is indicated in the "TYPE OF LOAN" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

Presentment, protest, and notice are hereby waived.

*Mark J. Williams*   (SEAL)
Mark J. Williams   *(BORROWER)*

*Peggy A. Williams*   (SEAL)
Peggy A. Williams   *(SPOUSE)*

1630 Century Lane

Paducah, Kentucky  42003

---

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ 000000 | XXXXXXXXX | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ XXXXXXX | |

✱ U.S. Government Printing Office: 1987—723-431/61818

*Position 2*                    FmHA 1940-16 (Rev. 8/87)

"A Reamortization and/or Deferral Agreement dated July 12, 2006, in the principal sum of $29,451.60, has been given to modify the payment schedule of this note."

USDA-FmHA
Form FmHA 427-1 KY
(Rev. 10-89)

*Position 5*

**391**

## REAL ESTATE MORTGAGE FOR KENTUCKY

THIS MORTGAGE is made and entered into by _____

_____ MARK J. WILLIAMS    and  his  wife PEGGY A. WILLIAMS _____

_____

residing in _____ McCracken _____ County, Kentucky, whose post office

address is _____ 1630 Century Lane _____ Paducah , Kentucky 42003 ,
herein called "Borrower," and:

WHEREAS Borrower is indebted to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government," as evidenced by one or more promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| March 7, 1990 | $33,000.00 | 8.7500% | March 7, 2023 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949 or any other statute administered by the Farmers Home Adminstration.

And it is the purpose and intention of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower.

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a, or any amounts due under any Shared Appreciation Agreement/Recapture Agreement entered into pursuant to 7 U.S.C. 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby sell, convey, and assign, with general warranty, unto the Government the following property situated in the State of Kentucky,

County(ies) of McCracken :                                                    :

Lot 82 in Great Oaks Subdivision as shown by Waiver of re-
subdivision of Lots 82 and 131, recorded in Plat Section  H,
page 369, McCracken County Clerk's Office.
Being the property conveyed to mortgagors by deed from USA/
FmHA,2/13/90,Deed Book 737  page 454  Mcracken
County Clerk's Office.

FmHA 427-1 KY (Rev. 10-89)

## EXHIBIT "B"

**392**

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)  To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)  To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)  If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)  Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)  All advances by the Government as described in this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)  To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)  To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)  To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)  To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe, and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)  To comply with all laws, ordinances, and regulations affecting the property.

**393**

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex or national origin.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(23) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at 333 Waller Avenue, Lexington, Kentucky 40504, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(24) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

**394**

Given under the hand(s) and seal(s) of Borrower this _____7th_____ day of ____March____ , 19 __90__ .

_Mark J. Williams_ _____ (SEAL)
Mark J. Williams

_Peggy A. Williams_ _____ (SEAL)
Peggy A. Williams

STATE OF KENTUCKY }
                              } ss:
COUNTY OF __McCRACKEN__ }

Before me, _____Georgia Mae Nelson Dunn_____ , a Notary Public in and for

the County of McCracken/ State at Large personally appeared _____

_____Mark J. Williams_____ and __Peggy A. Williams__ , his wife,

who acknowledged that they executed the foregoing instrument on the _____7th_____

day of ____March____ , 19 __90__ , as their free act and deed.

WITNESS my hand and official seal this _____7th_____ day of __March__ 19 __90__

(SEAL)                              _Georgia Mae Nelson Dunn_
My commission expires: __Sept.2,1991.__          McCracken Co.,/State at Large Notary Public

## PREPARER'S STATEMENT

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of

__GEORGIA M. NELSON DUNN, ATTORNEY__
                              *(name)*
__425 S. 6 St., P.O. Box 1265, Paducah, Ky. 42002-1265__
                              *(address)*

                              _Georgia M Nelson Dunn_
                              *(Signature)*

## RECORDER'S CERTIFICATE

STATE OF KENTUCKY }
                              } ss:
COUNTY OF __McCRACKEN__ }

I, __MARTHA NELL BRADFORD__ , Clerk of the County Court for the County aforesaid, do certify

that the foregoing mortgage was on the _____7th_____ day of __March__ , 19 __90__ lodged for record

at __2:35__o'clock __P.__M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this _____7th_____ day of __March__ ,19 __90__ /in Mtg.Book __456__

                                                  Page __391__

Paid $__/__ Recording Fee                    __MARTHA NELL BRADFORD__
Paid $_____ Deed Tax          Clerk of __McCracken__ County Court
Filed ____March 190
at __2:35__ M o'clock.          By _Lisa Boyd_ , D.C.
MARTHA NELL BRADFORD, Clerk
By _Lisa C. Calhoun_ D.C.
Recorded Mtg Book __456__ Page          _G.M.N. Dunn_
              __391__

FORM APPROVED
OMB No. 0575-0086

**USDA-RHS**
Form FmHA 1965-15
(Rev. 10-96)

**ASSUMPTION AGREEMENT**
**Single-Family Housing Loans**

Type of Loan ___RH___

[X] Sec. 502   [ ] Non Program   [ ] Sec. 504

Loan Number _____

*Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB control number.*

This Agreement dated ___August 12, 1998___ , is between the United States of America, acting through the Rural Housing Service (RHS) and its successors and assigns (herein called the Government, and ___Kristopher W Denson & Kelly J Denson___

(herein called Borrower), whose mailing address is ___1507 S 4th Street, Paducah, KY  42003___

The Government is the holder of one or more debt instrument secured by one or more of the following described security instruments executed by ___Mark J. Williams & Peggy A. Williams Clark___

Case Number _____ , on real property described therein which is located in ___Mccracken___ County, State of ___Kentucky___

| Type Instrument | Date Executed | Office Where Recorded | Book/Volume/ Document Number | Page Number |
|---|---|---|---|---|
| R.E.Mortgage | 03/07/1990 | Mccracken | 456 | 000391 |
|  |  |  |  |  |
|  |  |  |  |  |

In consideration of the assumption of indebtedness as herein provided and the Government's consent to this assumption and related conveyance of the security property, if applicable, it is agreed as follows:

1. Borrower hereby assumes liability for and agrees to pay to the order of the Government at the RHS office shown below (or other location as may later be specified) the principal sum of ___Thirty Thousand Four Hundred Five Dollars & 39/Cents___ dollars

($ ___30,405.39___ ) plus interest at the rate of ___Six and One Quarter___ percent ( ___6.250___ %) per annum, payable in installments as follows:

$ ___181.57___ on ___September 12, 1998___ , and

$ ___181.57___ thereafter on the ___12th___ of each ___month___ until the principal and interest are fully paid, except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable ___Thirty Three___ ( ___33___ ) years from the date of this Agreement.

2. Payments of principal and interest shall be applied in accordance with Government's accounting procedures in effect on the date of receipt of the payment. If Borrower's payment has not been received by the end of 15 days after it is due, Borrower will pay a late charge in the amount of 4% of the overdue payment of principal and interest.

3. The provisions of the debt instruments hereby assumed shall, except as modified herein, remain in full force and effect, and Borrower hereby assumes the obligations of and agrees to comply with all covenants, agreements, and conditions contained in said instruments, as modified herein, as though Borrower had executed them as of the date thereof as principal obligors. Nothing contained herein shall be construed to release the transferor from liability on the above described debt instruments.

4. Any provisions of the debt and security instruments which require that the borrower occupy the Government-financed dwelling or refinance to another credit source do not apply to assumption on Non Program terms.

5. This Agreement is subject to present regulations of the Government and to its future regulations which are not consistent with the express provisions hereof.

_____
(Co-signer)

Kristopher W. Denson
_____
Kristopher W. Denson   Borrower

UNITED STATES OF AMERICA
RURAL HOUSING SERVICE

By ___Joni J. Jordan___

Kelly J. Denson
_____
Kelly J. Denson   Borrower

Title ___Community Development Specialist___

Date ___August 12, 1998___

Account # 0016788315

RHS Field Office Address: ___2715 Olivet Church Road, Paducah, KY  42001___

FmHA 1965-15 (Rev. 10-96)


EXHIBIT "C"

USDA-RHS
Form FmHA 1940-16
(Rev. 10-96)

*Denson*

## PROMISSORY NOTE

Type of Loan SECTION 502

Loan No:

Date: __August 12__ , __1998__

__1630 Century Lane__
(Property Address)

__Paducah__ , __Mccracken__ , __Kentucky__
(City or Town)      (County)      (State)

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors)("Government") $ __21,965.00__ (this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of __6.250__ %.The interest rate required by this section is the rate I will pay both before and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below:

☐ I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____ , _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

☒ II. Payments shall not be deferred. I agree to pay principal and interest in __396__ installments as indicated in the box below.

> I will pay principal and interest by making a payment every month.
> I will make my monthly payment on the __12th__ day of each month beginning on __September 12__ , __1998__ and continuing for __395__ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on __August 12__ , __2031__ , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
> My monthly payment will be $ __131.17__ . I will make my monthly payment at __the post office__ __address noted on my billing statement__ or a different place if required by the Government.

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

1

## EXHIBIT "D"

**LATE CHARGES.** If the Government has not received the full amount of any monthly payment by the end of 15 days after the date it is due, I will pay a late charge. The amount of the charge will be 4.000 percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

**BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

**ASSIGNMENT OF NOTE.** I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

**CREDIT ELSEWHERE CERTIFICATION.** I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

**USE CERTIFICATION.** I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

**LEASE OR SALE OF PROPERTY.** If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

**REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT.** I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

**SUBSIDY REPAYMENT AGREEMENT.** I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

**CREDIT SALE TO NONPROGRAM BORROWER.** The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

**DEFAULT.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Account # 

**NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA / Rural Housing Service, c/o Customer Service Branch, P.O. Box 66889, St. Louis, MO 63166 _____, or at a different address if I am given a notice of that different address.

**OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

**WAIVERS.** I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING:** Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.

_Kristopher W. Denson_ _____ Seal        _Kelly J. Denson_ _____ Seal
Kristopher W. Denson    Borrower              Kelly J. Denson    Borrower

_____ Seal        _____ Seal
Borrower                     Borrower

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ 21,965.00 | 8/12/98 | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ 21,965.00 | |

"A Reamortization and/or Deferral Agreement dated July 12, 2004, in the principal sum of $20,660.09, has been given to modify the payment schedule of this note."

"A Reamortization and/or Deferral Agreement dated July 12, 2006, in the principal sum of $20,776.53, has been given to modify the payment schedule of this note."

Account # ████████

3

Form RD 3550-14 KY
(11-96)

Space Above This Line For Recording Data]

Form Approved
OMB No. 0575-0172

### United States Department of Agriculture
### Rural Housing Service

# MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("Security Instrument") is made on **AUGUST 12** , 1998 [Date]
The mortgagor is **KRISTOPHER W. DENSON AND KELLY J. DENSON, his wife**
("Borrower").

This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| March 7, 1990 | $33,000.00 | March 7, 2023 |

The above described Promissory Note which has an outstanding balance of $30,159.57 with accrued interest in the amount of $245.82 has been modified by an Assumption Agreement dated August 12, 1998 as follows:

| | | |
|---|---|---|
| August 12, 1998 | $30,405.39 | August 12, 2031 |
| August 12, 1998 | $21,965.00 | August 12, 1998 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower does hereby mortgage, grant, and convey to Lender the following described property located in the County of

McCracken , State of Kentucky

Lot 82 in Great Oaks Subdivision as shown by Waiver of re-subdivision of Lots 82 and 131, recorded in Plat Section H, page 369, McCracken County Clerk's Office.
Being the same property conveyed to Kristohper W. Denson and wife, Kelly J. Denson by deed from Peggy A. Clark and husband, Stephen Clark, dated August 12, 1998 recorded in Deed Book _____, Page _____, McCracken County Clerk's Office.

which has the address of            1630 Century Lane                    Paducah
                                                     [Street]                                      (City)
Kentucky     42003     [ZIP]     ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.

*Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Agriculture, Clearance Officer, STOP-7602, 1400 Independence Ave., SW, Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB number.*

Page 1 of 6


EXHIBIT "E"

Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal and Interest; Prepayment and Late Charges.**  Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2.  **Funds for Taxes and Insurance.**  Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any.  These items are called "Escrow Items."  Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount.  If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount.  Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity.  Lender shall apply the Funds to pay the Escrow Items.  Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge.  However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise.  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made.  The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law.  If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency.  Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.  If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3.  **Application of Payments.**  Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4.  **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any.  Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph.  If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

    **5.   Hazard or Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires.  The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.  If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

    All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause.  Lender shall have the right to hold the policies and renewals.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.

    Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.  If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds.  Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due.  The thirty (30) day period will begin when the notice is given.

    Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments.  If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

    **6.   Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property.  Borrower shall maintain the improvements in good repair and make repairs required by Lender.  Borrower shall comply with all laws, ordinances, and regulations affecting the Property.  Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest.  Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note.  If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

    **7.   Protection of Lender's Rights in the Property.**  If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.  Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs.  Although Lender may take action under this paragraph 7, Lender is not required to do so.

    Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

    **8.   Refinancing.**  If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

    **9.   Inspection.**  Lender or its agent may make reasonable entries upon and inspections of the Property.  Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

    **10.   Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.  In the event of a total taking of the Property, the proceeds shall be

applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15. Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security

Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

19. **Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21. **Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

23. The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

24. Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

25. **Release.** Upon termination of this mortgage, after payment in full, the mortgagee, at Borrower's expense, shall execute and file or record such instruments of release, satisfaction and termination in proper form pursuant to the requirements contained in KRS 382.365.

26. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and

Page 5 of 6

shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument

*Kristopher W. Denson* [SEAL]
Kristopher W. Denson   *Borrower*

*Kelly J. Denson* [SEAL]
Kelly J. Denson   *Borrower*

STATE OF KENTUCKY
                                    } ss:
COUNTY OF <u>MCCRACKEN</u>                    ACKNOWLEDGMENT

Before me, <u>Peggy V. Keeley</u>, a Notary Public in and for the County of _____, personally appeared <u>Kristopher W. Denson</u> <u>and his wife, Kelly J. Denson</u> who acknowledged that <u>they</u> executed the foregoing instrument on the <u>12th</u> day of <u>August</u>, <u>1998</u> as <u>their</u> free act and deed.

WITNESS my hand and official seal this <u>12th</u> day of <u>August</u> <u>1998</u>

[SEAL]

*Peggy V. Keeley* Notary
Public
My commission expires <u>3-18-2002</u>

PREPARER'S STATEMENT
The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of:

*James V. Keeley*                    *J. V. Keeley*
(Name)                               (Signature)

619 Broadway, Paducah, Ky 42001
(Address)

RECORDER'S CERTIFICATE

STATE OF KENTUCKY
                                    } ss:
COUNTY OF *McCracken*

I, _____, Clerk of the County Court for the County aforesaid, do certify that the foregoing mortgage was on the _____ day of _____, _____, lodged for record _____ at _____ o'clock ___M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this _____ day of _____, _____.

_____
Clerk of              County Court
By _____, D.C.

Page 6 of 6

Form RD 3550-12
(10-96)

United States Department of Agriculture
Rural Housing Service

Form Approved
OMB No. 0575-0166

## SUBSIDY REPAYMENT AGREEMENT

1.    As required under section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with section 502 of the Housing Act of 1949, is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2.    When I fail to occupy or transfer title to my home, recapture is due. If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but, payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full. In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3.    Market value at time of initial subsidy $ 52,000.00  less amount of Rural Housing Service (RHS) loans $ 52,375.39  less amount of any prior liens $ _n/a_  equals my/our original equity $ -375.39 . This amount equals  0  % of the market value as determined by dividing original equity by the market value.

4.    If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, complete the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans. Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

5.

| months loan outstanding | | Average interest rate paid | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0 – 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 – 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 – 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 – 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 – 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 – 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6.    Calculating Recapture

Market value (at the time of transfer or abandonment)
LESS:
Prior liens,
RHS balance,
Reasonable closing costs,
Principal reduction at note rate,
Original equity (see paragraph 3), and
Capital improvements.
EQUALS
Appreciation value. (If this is a positive value, continue.)
TIMES
Percentage in paragraph 4 (if applicable),
Percentage in paragraph 5, and
Return on borrower's original equity (100% - percentage in paragraph 3).
EQUALS
Value appreciation subject to recapture. Recapture due equals the lesser of this figure or the amount of subsidy received.

| | Date |
|---|---|
| Borrower  *Kristopher W. Denson*  Kristohper W. Denson | 8/12/98 |
| Borrower  Kelly J. Denson  *Kelly J. Denson* | 8/12/98 |

Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., Washington, D.C. 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office. You are not required to respond to this collection of information unless it displays a currently valid OMB control number.

EXHIBIT "F"

☆ U.S. GPO:1996-578-536

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

## DEFENDANTS

KRISTOPHER W. DENSON, ET AL.

County of Residence of First Listed Defendant   MCCRACKEN
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☑ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☑ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. SECTION 1345
Brief description of cause:
RURAL HOUSING SERVICE (RHS) f/k/a FARMERS HOME ADMINISTRATION (FmHA) FEDERAL FORECLOSURE

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $
$66,847.34

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☑ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE
2/11/2019

SIGNATURE OF ATTORNEY OF RECORD
s/ William F. Campbell

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____